IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-CR-0166-DGK |
| | ) | |
| JUAN COLBERT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER CONCERNING MOTION TO COMPEL**

Now before the Court is Defendant Juan Colbert's Motion to Compel Disclosure of Favorable Evidence. ECF No. 50. Defendant requests the Court order the Government to produce certain information concerning the sole witness who testified at Defendant's suppression hearing. The witness, a detective with the Kansas City, Missouri, Police Department ("KCPD"), was indicted after the suppression hearing for involuntary manslaughter and armed criminal action in connection with an incident that occurred prior to the suppression hearing.

For the following reasons, the Court orders the Government to produce to Defendant the KCPD homicide file reviewed by the Court in camera, subject to the attached protective order.

The Court also acknowledges that the Government has agreed to provide defense counsel with a *Giglio* package prepared by the Jackson County Prosecutor's Office. The Court notes the Government is providing this package without court review but subject to the attached protective order.

**Background**

On May 21, 2019, a grand jury indicted Defendant Juan Colbert on one count of being a felon in possession of a firearm. On December 4, 2019, Defendant filed a motion to suppress

evidence and statements on the grounds that the police violated his Fourth Amendment rights when they searched the car he was driving and allegedly found the firearm at issue.

On January 10, 2020, the Honorable Magistrate Judge Sarah W. Hays held an evidentiary hearing on the motion. KCPD Detective Eric DeValkenaere was the sole witness to testify. At the conclusion of the hearing, Magistrate Hays indicated that she would likely deny the motion to suppress. Before she formally ruled on the motion, however, Defendant changed his plea to guilty without the benefit of a plea agreement.

On June 18, 2020, DeValkenaere was charged in Jackson County, Missouri, with involuntary manslaughter and armed criminal action in connection with a shooting that occurred while on duty on December 3, 2019. After the charges were filed, defense counsel informally requested the Government produce DeValkenaere's KCPD Internal Affairs file.

The Government states it made a formal request through the KCPD's Office of General Counsel for "documents"—apparently meaning the KCPD's Internal Affairs file containing information on the detective—and the Government received these documents on July 22, 2020. The Assistant United States Attorney assigned to this case, along with his supervisor and the Criminal Chief of the office, then reviewed these documents. They determined that the documents "contained no discoverable evidence as it related to the instant case." Gov't. Response in Opp'n. at 2, ECF No. 53. That is, they determined the documents contained no information that must be disclosed under either *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or Federal Rule of Criminal Procedure 16, because they were "deemed to not be of probative value" under either *Brady* or *Giglio*.

The Government notified defense counsel of its determination on August 31, 2020. On December 7, 2020, Defendant filed the pending motion to compel.

On April 7, 2021, the Court ordered the Government to provide the KCPD internal affairs file for in camera review. ECF No. 55. After reviewing the file in camera, the Court held a teleconference with the parties and discussed its observation that the file's contents were very limited. On May 5, 2021, the Government delivered 593 pages of documents which were not part of the internal affairs file for in camera review. These documents are reports from the KCPD's homicide squad's investigation into the December 3, 2019, shooting.

The Court also notes that the Government has arranged for Jackson County to provide defense with a *Giglio* package of documents related to DeValkenaere.

## Discussion

Under *United States v. Brady*, 373 U.S., 83 (1963), and its progeny, "prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence." *United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016). "This duty extends not only to evidence of which a prosecutor is aware, but also to material 'favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *Id*. (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). The duty to disclose such evidence is applicable even when there has been no request by the accused. *Strickler v Greene*, 527 U.S. 263, 280 (1999). Moreover, the *Brady* rule "encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Id*. at 280–81 (quoting *Kyles*, 514 U.S. at 438). "In order to comply with *Brady*, therefore 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *Id*. at 281 (quoting *Kyles*, 514 U.S. at 437)).

Evidence is material if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different. *Id*. at 280. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but

3

whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. at 289–90.

Impeachment evidence falls within the *Brady* rule and is subjected to the same materiality analysis. *See United States v. Bagley*, 473 U.S. 667, 676–78 (1985). The government must also disclose matters that affect the credibility of prosecution witnesses. *Giglio v. United States*, 405 U.S. 150, 153–55 (1972); *United States v. Garcia*, 562 F.3d 947, 952 n.7 (8th Cir. 2009).

In the present case, Defendant argues that the prosecutor in the pending Jackson County contends DeValkenaere violated the Fourth Amendment. If so, "that would be important information for this Court to know in evaluating Mr. Colbert's motion to suppress" because he was the sole witness at the suppression hearing. Mot. at 5. Defendant claims that had this information been disclosed to Defendant before the hearing, DeValkenaere would have been cross-examined and "potentially impeached" with the information. *Id*. at 6. "Without the government's producing these documents to counsel, it is impossible to fully know—and for counsel to advocate—how Mr. Colbert's rights were potentially violated in this case." *Id*. Defendant also contends that if there is credible evidence in the file that DeValkenaere committed involuntary manslaughter and armed criminal action, then that is relevant to his credibility in this case. *Id*. Defendant argues all he needs to do is make a "colorable showing that the file contained relevant *Giglio* material" for the Court to compel production of the file. *Id*. at 7 (quoting *United States v. Mazzulla*, No. 4:17-cr-3089, 2018 WL 1954208, at *1 (D. Neb. Apr. 14, 2018)).

The Government initially opposed the motion, arguing the internal affairs file is of no probative value in this case. Whether the Government contends all of the information in the homicide file is of no probative value to this case is less clear.

After reviewing the internal affairs file, the Court agrees the internal affairs file has little probative value to this case, but only because it contains little more than a table of contents. The "meat" of the KCPD's investigation into the shooting is contained in the homicide file.

After carefully considering the matter, the Court holds the entire homicide file should be given to defense counsel for review—subject to a strict protective order. There is a colorable claim here that the homicide file contains information relevant to impeachment and DeValenaere's credibility in this case. A grand jury has charged DeValkenaere with involuntary manslaughter, so there is probable cause supporting this charge. The Government concedes the Jackson County Prosecutor contends DeValkenaere violated the Fourth Amendment during the shooting, and whether DeValkenaere violated the Fourth Amendment is an issue in this case. Indeed, it is Defendant's entire defense. Finally, the Government has also not identified any interest, such as prejudice to the Government, which weighs against disclosure, nor can the Court identify any.[1]

Accordingly, the Government shall produce to defense counsel the entire 593 page KCPD homicide file given to the Court for in camera review, subject to the attached protective order.

To give the Government ample time to appeal this order, the homicide file shall be produced on or before May 28, 2021. The Court will not consider any motions filed after May 23, 2021, to stay or reconsider this order, or to extend this deadline.

**IT IS SO ORDERED.**

Date: May 13, 2021             /s/ Greg Kays
                               GREG KAYS, JUDGE
                               UNITED STATES DISTRICT COURT

---

[1] While release of the homicide file to the general public might prejudice one side or the other in DeValenaere's pending criminal case, the Court can address this concern—ensuring the integrity of the state court criminal trial—via the protective order.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:19-CR-0166-DGK |
| JUAN COLBERT, | ) | |
| Defendant. | ) | |

## PROTECTIVE ORDER

This case is before the Court on Defendant's Motion to compel disclosure of favorable evidence pursuant to Rule 16 and for a Protective Order. Following consultation between the parties, the United States of America, by Assistant United States Attorney Joseph Marquez, and Defendant, by his attorney, Carie Allen, Assistant Federal Public Defender, the Court Orders as follows.

IT IS HEREBY ORDERED THAT:

1. Only the following individuals may examine the *Giglio* package and any materials from the homicide file:

    (a) counsel for Defendant;

    (b) Defendant, with counsel present;

    (c) any expert retained by Defendant to assist in the defense of this case;

    (d) investigators, paralegals, and attorneys employed by the Federal Public Defender for the Western District of Missouri assisting in the defense of this matter.

2. All individuals who receive access to these materials pursuant to the Court's order directing the Government to provide these materials must, prior to receiving access to the materials, acknowledge that:

(a) they have reviewed the Protective Order;

(b) they understand its contents;

(c) they agree to abide by it; and

(d) they understand that failure to abide by this Protective Order will result in sanctions by the Court and may result in state or federal criminal charges.

3. Defense counsel Carie Allen shall keep a list of all individuals who have received access to these materials.

4. All materials shall be used solely and exclusively in connection with this case and for no other purposes.

5. None of the materials shall be copied, printed, electronically mailed, or in any way reproduced, distributed, disclosed, or disseminated absent a specific order of this Court, except that copies may be made for the exclusive purpose of generating exhibits for use in court.

6. Defendant may renew his motions and/or seek to modify these procedures should an issue arise. The Government may object to any modification of these procedures, or to seek a modification in these procedures should an issue arise.

**IT IS SO ORDERED.**

Date: May 13, 2021  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT